## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ASPHALT PAVING SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BLACKLIDGE EMULSIONS, INC., <br><br> Defendant. | Case No.: |

### COMPLAINT

Plaintiff Asphalt Paving Systems, Inc. ("APS") hereby files this Complaint against Defendant Blacklidge Emulsions, Inc. ("Blacklidge") (APS and Blacklidge, collectively, the "Parties") and states as follows:

### The Parties

1. APS is a New Jersey corporation with a principal place of business at 500 North Egg Harbor Road, Hammonton, New Jersey 08037 and therefore is a citizen of the State of New Jersey

2. Blacklidge is a Mississippi corporation with a principal place of business at 12251 Bernard Parkway, Gulfport, Mississippi 39503 and therefore is a citizen of the State of Mississippi.

**Jurisdiction and Venue**

3. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between APS and Blacklidge, and the amount in controversy, exclusive of interest costs, and attorney's fees, exceeds the sum of $75,000.00.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred herein and because the Parties specifically consented to venue in this District pursuant to a contract between them.

**Factual Background**

The Contract

5. On June 25, 2020, the Parties entered into a "Know-How License and Supply Agreement", effective as of January 1, 2021 (the "Contract"), pursuant to which APS would manufacture road maintenance products (the "Licensed Products") for Blacklidge using Blacklidge's formulas. A true and correct copy of the Contract is annexed hereto as Exhibit A.

6. The Licensed Products would be manufactured at APS's facility at 9021 Wire Road, Zephyrhills, Florida 33540 (the "Facility").

7. The Contract provides in relevant part:

> Upon execution of this License Agreement, [APS] shall use its best efforts to manufacture at the Facility to the highest quality and in strict accordance with the specifications provided by [Blacklidge] and sell to [Blacklidge] all of the Licensed Products manufactured by [APS] . . . [U]pon the Effective Date of this Agreement, [APS] shall have the capacity to produce not less than forty-five thousand (45,000) gallons per day and not less than five million (5,000,000) gallons of the Licensed Products annually; and
>
> [Blacklidge] shall purchase a minimum of two million ($2,000,000) gallons of licensed products per year.

8. The Contract had a four-year term with two automatic four-year extensions.

9. The Contract could only be terminated prior to the 13th year on one of five grounds: (i) either Party failing to pay any amount due under the Contract on the due date for payment and remains in default not less than fifteen (15) days after the non-defaulting party's written notice; (ii) either Party breaching the Contract (other than through a failure to pay any amounts due) and fails to cure the breach within thirty (30) days of the non-defaulting party's written notice; (iii) either Party being in financial hardship, such as insolvency; (iv) APS undergoing a change in control; or (v) the Parties mutually agreeing to terminate.

10. Upon termination, the Parties were required to submit a Payment Statement to the other party within thirty (30) days, and **any payments due to the other party were to become immediately payable** with submission of the final Payment Statement.

11. The Contract provides in relevant part:

Attorney's Fees.  In the event that any action, suit, or other proceeding is instituted or commenced by either party hereto against the other party arising out of or related to this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs from the non-prevailing party.

### Blacklidge's Wrongful Termination of the Contract

12. As an inducement to execution of the Contract, Blacklidge represents to APS that it would be buying at or near the 5,000,000 gallon capacity every year.

13. To make the Licensed Products, APS had to buy, and did, specialized equipment and, to meet the "minimum requirements", APS had to, and did, substantially expand the Facility's capacity.

14. On April 1, 2021, Blacklidge informed APS of its intent to terminate the Contract without cause and commenced vacation of the Facility.

15. At the time of termination, Blacklidge owed payments to APS.

16. APS immediately objected to the termination.

17. On April 9, 2021, APS, through counsel, sent a Notice of Default to Blacklidge advising that APS did not consent to Blacklidge's unilateral and wrongful termination and that Blacklidge had fifteen (15) days to cure its delinquent payment and thirty (30) days to cure its performance default pursuant to Section 14.2 of the Contract.

18. Blacklidge failed to retract its termination and otherwise failed to cure its breaches of the Contract.

19. Based on the minimum purchase quantities contemplated by the Contract, Blacklidge's wrongful termination of the Contract has cost APS over ten million in profits and has rendered APS's plant modifications useless.

## COUNT I
## Breach of Contract

20. Each of the preceding paragraphs is incorporated and repeated by reference herein as if set forth at length.

21. APS has met all of its contractual obligations under the Contract.

22. By way of the foregoing, including, but not limited to unilaterally terminating the Contract without cause, failing to timely cure its material default, and failing to make timely payments, Blacklidge has materially breached the Contract.

23. As a direct and proximate result of said breach, APS has been damaged.

## COUNT II
## Breach of the Covenant of Good Faith and Fair Dealing

24. Each of the preceding paragraphs is incorporated and repeated by reference herein as if set forth at length.

25. The Parties entered into a binding contract governed by the law of Florida.

26. Every contract in Florida imposes a duty of good faith and fair dealing on each party in its performance and enforcement of the contract.

27. By way of the foregoing conduct, and including, but not limited to, causing APS to expend significant funds to feed the capacity requirements of the Contract by January 1, 2021 only to unilaterally terminate the Contract in April 2021, Blacklidge has breached the implied covenant of good faith and fair dealing

28. As a direct and proximate result of said breach, APS has been damaged.

## COUNT III
## Promissory Estoppel

29. Each of the preceding paragraphs is incorporated and repeated by reference herein as if set forth at length.

30. In the alternative to the preceding counts, to the extent a binding contract did not exist between the Parties, Blacklidge made an affirmative representation to APS regarding minimum purchase of materials from APS.

31. APS actually relied on that representation to its detriment by, *inter alia*, undertaking significant expenses to retrofit the Facility to meet the production requirements insisted upon by Blacklidge.

32. The failure to enforce Blacklidge's promise to APS would result in injustice.

33. As a direct and proximate result of the foregoing, APS has been damaged.

**WHEREFORE**, Plaintiff Asphalt Paving Systems, Inc. demands judgment against Defendant Blacklidge Emulsions, Inc. for:

a. Compensatory damages;

b. Injunctive relief declaring nullity or voidness of any restrictive covenants entered into by APS for performance of the Contract with Blacklidge;

c. Attorney's fees, interest, and costs of suit; and

d. Such other and further relief as the Court deems just and proper.

Dated: September 15, 2021               Respectfully submitted,

By: /s/ *John F. Palladino*
John F. Palladino, Esq.
Florida Bar ID # 87184
HANKIN SANDMAN PALLADINO
 WEINTROB & BELL
A Professional Corporation
30 S. New York Avenue
Atlantic City, NJ  08401
T: (609) 344-5161
F: (609) 344-7913
E-mail: john@hankinsandman.com
*Attorneys for Plaintiff Asphalt Paving Systems, Inc.*